UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 1620 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| DZINE PRODUCTS, LLC, d/b/a | ) |
| TACKFORM, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff National Products Inc. ("NPI") filed this case against Defendant Dzine Products, LLC d/b/a Tackform LLC ("Tackform"), alleging that Tackform has infringed on NPI's patent for a quick release electronics platform, U.S. Patent No. 6,585,212 (the "'212 Patent"). NPI accuses three different Tackform cell phone mount products of infringement: (1) the Bike Phone Holder products, (2) the Freedom products, and (3) the Enduro products. The parties now seek construction of several claims in the '212 Patent, with the parties agreeing on the construction of four terms but disputing six terms. The Court held a claim construction hearing on June 11, 2021. The Court now construes the disputed terms as set forth below.

## BACKGROUND

### A. The '212 Patent

The '212 Patent, entitled "Quick Release Electronics Platform," covers a mounting platform for holding portable electronic devices such as laptops or cell phones. The invention provides "a novel spring-loaded frame structure in combination with a novel clamping mechanism that securely, but gently, compresses an accessory device onto padded device mounting surfaces," designed to withstand vibration and shock encountered in a moving vehicle

and prevent slippage of the accessory device. JA-6, col. 1, ll. 39–42. The invention has two major structural components: "(1) the platform, where the accessory device sits, which comprises of two large frame members of body portions that are pulled towards each other through a biasing member, such as a tension spring; and (2) several smaller arm tools that attach to both sides of the frame members and jut up above the top of the platform, so that these arms can grip the upper edge of the accessory device and secure the device against the platform." *Nat'l Prods., Inc. v. Arkon Res., Inc.*, No. C15-1984JLR, 2017 WL 4403328, at *1 (W.D. Wash. Oct. 2, 2017).

NPI asserts claims 21, 23, 27, and 30 of the '212 Patent against Tackform. Independent claim 21 provides:

> A mounting device, comprising:
>
> a clamping mechanism, comprising:
>
> a substantially rigid base portion including a mounting structure for mounting on an external member,
>
> a substantially rigid jaw portion extending at an obtuse angle from one end of the base portion,
>
> a resilient compressible pad fixed to a surface of the jaw portion positioned on an interior of the obtuse angle;
>
> first and second frame members slidably interconnected for relative motion along a first direction, one of the first and second frame members including a device mounting surface positioned relative to the first direction and a clamp mounting surface formed relative to the device mounting surface, the clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface; and
>
> a biasing member mechanically coupled between the first and second frame members for biasing the first and second frame members together along the first direction.

JA-10, col. 9, ll. 31–53. Claim 23 depends from claim 21 and provides that the clamping mechanism's resilient compressible pad is "formed of an elastomer." JA-10, col. 9, ll. 60–61.

Independent claim 27 provides:

> A clamping mechanism, comprising:
>
> a substantially rigid, elongated base portion including structure for mounting on an external member;
>
> a substantially rigid, elongated jaw portion extending at a predetermined obtuse angle from one end of the elongated base portion;
>
> a resilient compressible pad mechanically fixed to a surface of the jaw portion positioned on an interior of the obtuse angle; and
>
> a mounting platform, including:
>
> first and second frame members being slidably interconnected for relative motion along a first direction, one of the first and second frame members including a device mounting surface positioned relative to the first direction and a clamp mounting surface formed relative to the device mounting surface, the clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface; and
>
> a biasing member being mechanically coupled between the first and second frame members for biasing the first and second frame members together along the first direction.

JA-10, col. 10, ll. 6–30. Claim 30 depends from claim 27 and provides that "the predetermined obtuse angle at which the jaw portion extends from one end of the elongated base portion is an angle between about 120 and about 150 degrees." JA-10, col. 10, ll. 40–43.

**B.  Related Proceedings**

This is not the first time NPI has filed an action alleging infringement of the '212 Patent. As relevant to this proceeding, in 2015, NPI filed suit against Arkon Resources, Inc. ("Arkon") and several others in the Western District of Washington. *Nat'l Prods. Inc. v. Arkon Res., Inc.*,

3

No. 15 C 1984 (W.D. Wash.). Arkon and its co-defendants requested *inter partes* review ("IPR") before the Patent Trial and Appeal Board ("PTAB"). On January 23, 2017, the PTAB declined to institute the IPR. Arkon proposed constructions for five of the '212 Patent's terms: jaw portion, base portion, angle, clamping member, and clamping mechanism. The PTAB declined to institute an IPR and, in doing so, "determine[d] that no term [of the '212 Patent] require[d] express construction."[1] JA-607. Thereafter, the *Arkon* court issued a claim construction order. *Arkon*, 2017 WL 4403328. The case was later transferred to the Central District of California, which adopted the claim construction order in ruling on summary judgment motions. No. 2:18-cv-02936-AB-SS, Doc. 194 at 5–6 (C.D. Cal. Jan. 9, 2019). The parties ultimately settled their dispute.

On August 27, 2019, NPI filed suit against Scanstrut Inc. ("Scanstrut") in the District of Connecticut, also asserting infringement of the '212 Patent. *Nat'l Prods. Inc. v. Scanstrut Inc.*, No. 3:19-cv-01322-VLB (D. Conn.). Scanstrut sought IPR review, which NPI opposed. On March 16, 2021, the PTAB denied the IPR request over a dissent. The parties have completed claim construction briefing, but the court has not scheduled a hearing or issued a claim construction order. None of the terms at issue in this case are subject to construction in the *Scanstrut* case.

## LEGAL STANDARD

"Judicial 'construction' of patent claims aims to state the boundaries of the patented subject matter, not to change that which was invented." *Fenner Invs., Ltd. v. Cellco P'ship*, 778

---

[1] At the time of the Arkon IPR decision, the PTAB gave the claim its "broadest reasonable construction in light of the specification of the patent in which it appears." 37 C.F.R. § 42.100(b) (version effective from May 2, 2016 to November 12, 2018). The PTAB now uses "the same claim construction standard that would be used to construe the claim under 35 U.S.C. § 282(b), including construing the claim in accordance with the ordinary and customary meaning of the claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent. 37 C.F.R. § 42.100(b) (version effective November 13, 2018).

F.3d 1320, 1323 (Fed. Cir. 2015). Not all claims require construction, only those in dispute and only to the extent necessary to resolve the dispute. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

The Court generally gives claim terms their plain and ordinary meaning as understood by a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Where the "plain and ordinary meaning of the disputed claim language is clear," such as where the term "is comprised of commonly used terms" that have "no special meaning in the art," the Court may conclude that no construction is necessary. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *see also Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). But to the extent the plain and ordinary meaning does not resolve the parties' dispute or is not apparent, the Court must construe the claim term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360–61 (Fed. Cir. 2008).

In considering the disputed claim terms, the Court primarily relies on intrinsic evidence, which "includ[es] the claims themselves, the specification, and the prosecution history of the patent." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013). The Court considers a claim term "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The prosecution history, which "consists of the complete record of the proceedings before the [U.S. Patent and Trademark Office] and includes the prior art cited during the examination of the patent," can help "inform the meaning of the claim language by

5

demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317. The presumption of ordinary meaning prevails in all but two situations: (1) "when a patentee acts as his own lexicographer" or (2) "when the patentee disavows the full scope of the claim term in the specification or during prosecution." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). "[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Id.* "[A]n inventor may disavow claims lacking a particular feature when the specification distinguishes or disparages prior art based on the absence of that feature." *Id.* The Court may consider statements made by a patent owner before the PTAB during an IPR, regardless of whether made before or after an institution decision, to determine whether a prosecution disclaimer or disavowal occurred. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360–61 (Fed. Cir. 2017). This ensures that "claims are not argued one way in order to maintain their patentability and in a different way against accused infringers." *Id.* at 1360.

While the Court must construe claims in light of the specification, it cannot read limitations from the preferred embodiments or specific examples in the specification into the claims. *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998). "[P]atent coverage is not necessarily limited to inventions that look like the ones in the figures." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007). Thus, while the Court may use the specification to aid in the interpretation of the claims, it may not use the specification as a source for adding extraneous limitations. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). But the Court may limit the claims based on the specification "where the specification makes clear at various points that the claimed

6

invention is narrower than the claim language might imply." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003).

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). But the Court may in its discretion refer to extrinsic evidence, such as dictionaries, treatises, and expert testimony, to help "educate the court regarding the field of the invention and . . . determine what a person of ordinary skill in the art would understand claim terms to mean." *Phillips*, 415 F.3d at 1319; *Vitronics*, 90 F.3d at 1585 n.6 ("Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."). Extrinsic evidence in general, however, is considered "less reliable than the patent and its prosecution history in determining how to read claim terms." *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013) (citation omitted), and "may not be used to vary or contradict the claim language" or "the import of other parts of the specification," *Vitronics*, 90 F.3d at 1584.

## ANALYSIS

### I. Agreed Terms

The parties agree to the construction of the following terms, which the Court adopts:

| Claim Term | Agreed Definition |
|---|---|
| "base portion" | a "bottom part of a clamping mechanism" |
| "jaw portion" | a "gripping part of a clamping mechanism that engages an accessory device" |

7

| "jaw portion extending at an obtuse angle from one end of the base portion" AND "jaw portion extending at an obtuse angle from one end of the elongated base portion" | a "jaw portion extending at an angle greater than 90 degrees and less than 180 degrees from one end of the [elongated] base portion" |
|---|---|
| "clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface" | "clamp mounting surface acts together with the mounting surface of the clamping mechanism so that the resilient compressible pad of the jaw portion is spaced away from and inclined towards the device mounting surface" |

## II.     Disputed Terms

### A.     "Device Mounting Surface" (Claims 21, 27)

The Court first considers the term "device mounting surface," which appears in claims 21 and 27.  The parties' dispute centers around whether the '212 Patent requires that an accessory device touch the "device mounting surface."  Tackform argues that the Court should construe "device mounting surface" as a "surface against which a device is pressed," while, as with all disputed terms, NPI argues that the term needs no construction.  Alternatively, NPI offers the construction to which it agreed in *Arkon*, "a surface that supports an accessory device."[2] Although NPI contends that nothing in the '212 Patent requires contact between the accessory device and "device mounting surface," its alternative construction does not differ significantly from Tackform's proposed construction and, in fact, suggests at least indirect contact.

Tackform first points to the specification to support its position that the accessory device must have some contact with the "device mounting surface."  For example, in summarizing the

---

[2] Tackform objects to this alternative construction because NPI did not offer it as part of the exchange of proposed claim terms and constructions required by Local Patent Rule 4.1.  But because the Court is not constrained by the parties' proposed constructions and Tackform had the opportunity to address the alternative construction in its reply brief and during the claim construction hearing, the Court overrules Tackform's objection.

invention, the '212 Patent states that the clamping mechanism "securely, but gently, compresses an accessory device onto padded device mounting surfaces." JA-6, col. 1, ll. 39–42. Further, in describing the preferred embodiment, the '212 Patent provides that "a substantially thin, flat base portion of the accessory device engages the first and second device mounting surfaces 18, 22." JA-7, col. 3, ll. 1–3. And, according to at least one embodiment, the pressure pad of the clamping mechanism acts as a compressed spring that "press[es] the accessory device against the device mounting surfaces 18, 22, thereby further limiting slippage of the device." JA-9, col. 7, ll. 13–16. Tackform also argues that the reference to friction between the accessory device and "device mounting surface" limiting slippage of the accessory device would be meaningless without some contact between the two. *See* JA-7, col. 3, ll. 16–21 ("The device mounting surfaces 18, 22 are equipped with a relatively high coefficient of friction that operates in combination with the pressure applied by [the clamping mechanism] to limit slippage of the accessory device relative to the device mounting surfaces.").

Additionally, Tackform contends that NPI's description of the '212 Patent to the PTAB, as well as its attempts to distinguish prior art, support a contact requirement. *See Poly-Am., L.P.*, 839 F.3d at 1136 ("[A]n inventor may disavow claims lacking a particular feature when the specification distinguishes or disparages prior art based on the absence of that feature."). As Tackform points out, in opposing the *Arkon* IPR, NPI stated that the '212 Patent's "combination of retention mechanisms results in a downward compression of a portable electronic device onto the device mounting surface." JA-530; *see also* JA-533 ("[A] portable electronic device . . . rests on device mounting surfaces 18 and 22 of the two frame members[.]"). And in response to Scanstrut's IPR request, NPI differentiated a prior art reference by arguing that neither of the surfaces described in the prior art "***engages*** the accessory device" and that, instead, those

9

surfaces "hold the device *away from* the portions of the rack and slide which Petitioners claim comprise the device mounting surfaces."[3] JA-659.

While NPI acknowledges that the jaw portion of the clamping mechanism must allow the invention to compress an accessory device downward, NPI maintains that this does not necessarily mean that the accessory device has direct contact with the "device mounting surface." Indeed, even some of Tackform's examples only require that the clamping mechanism compress the accessory device down *toward*, not onto, the "device mounting surface." *See, e.g.*, JA-620 (the invention "results in a downward compression of a portable electronic device by the jaw portion toward the device mounting surface"); JA-623 (retention mechanisms allow the clamps to securely compress "the portable electronic device toward a padded or unpadded device mounting surface"); JA-625 (clamping mechanisms "caus[e] the accessory device to be compressed downwardly toward that surface"). Further, NPI argues that the specification actually reveals that an accessory device need only be supported, not pressed against or in direct contact with, the "device mounting surface" because, for example, pads may be added between the "device mounting surface" and the accessory device. *See* JA-7, col. 3, ll. 53–67 (describing how a thin rubber sheet or other non-skid material like sand paper may be adhered to the device mounting surface, or, alternatively, that the high friction portion of the surface be formed with a

---

[3] Tackform also presents the Court with a comparison between the accused Enduro products and the '212 Patent language, arguing that the Enduro products cannot infringe because the Enduro products' clamp arms put inward pressure on the accessory device while forcing it away from the "device mounting surface." Although the Court takes note of the general specifications of the Enduro products, the Court does not construe the term "device mounting surface" or any other disputed term in reference to the Enduro products. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006) (rule against construing claims with reference to accused device "forbids biasing the claim construction process to exclude or include specific features of the accused product or process" but "does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component"); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("[C]laims are not construed 'to cover' or 'not to cover' the accused device. That procedure would make infringement a matter of judicial whim. It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement.").

grooved, serrated, or other roughened surface area).

But the Court agrees with Tackform that the '212 Patent requires some contact—whether direct or indirect—between the "device mounting surface" and the accessory device. The specification uses terms like "onto," "engages," and "presses" to describe the interaction of the two components, a focus repeated by NPI in its responses to the IPR requests. And even the allowance for a padded surface does not detract from this conclusion, for in that case, the accessory device comes into indirect contact with the "device mounting surface." Given the possibility for indirect contact, however, the Court finds that NPI's proposed alternative construction upon which the *Arkon* parties agreed, "a surface that supports an accessory device," more appropriate and adopts it for purposes of this case.

### B. "Clamping Mechanism" (Claims 21 and 27)

Next, the Court considers the term "clamping mechanism," which appears in claims 21 and 27. The parties generally agree that the "clamping mechanism" comprises the arm tool of the invention, tracking the *Arkon* court's conclusion. 2017 WL 4403328, at *7. But the *Arkon* court went further, stating that the term refers to "the arm tool that is mounted to the side of the frame members and holds the accessory device in place." *Id.*

Deviating from the *Arkon* court's definition, Tackform proposed that the Court construe a "clamping mechanism" as an "arm tool that compresses the upper surface of an accessory device downwardly toward the device mounting surface," maintaining that the downward compression exerted by the "clamping mechanism" is what makes the '212 Patent novel. *See* JA-6, col. 1, ll. 39–41 (describing a "novel clamping mechanism that securely, but gently, compresses an accessory device onto padded device mounting surfaces"). NPI contended that "clamping mechanism" needs no construction because the claims define it by its structural sub-components.

Moreover, NPI argued that Tackform too narrowly focuses on the "clamping mechanism" in seeking to add the action of downward compression to its definition, pointing out that its discussion of downward compression describes the interaction of the frame structure and the clamps of the invention, not just the function of the "clamping mechanism." *See* JA-532 (describing the invention's combination of an "inwardly biased, two-part frame structure on which the portable electronic device is placed, with clamps having jaw portions inclined toward that device mounting surface" and how "[t]his novel combination of retention mechanisms allows the clamps to 'securely, but gently, compress[ ]' the portable electronic device onto the device mounting surface" (second alteration in original)).

During the claim construction hearing, after some debate, the parties agreed on the following construction: "an arm tool that holds the accessory device in place and urges the accessory device downwardly toward the device mounting surface." The Court adopts this definition for "clamping mechanism," which is consistent with the specification and how the term is used throughout the patent.

### C. "Clamp Mounting Surface" (Claims 21 and 27)

Next, the parties dispute the term "clamp mounting surface," which appears in claims 21 and 27. Tackform argues that the Court should construe "clamp mounting surface" as "a surface to which the clamping mechanism is mounted." NPI generally agrees with Tackform, stating that the "clamp mounting surface" is "simply a surface for mounting a clamping mechanism," Doc. 39 at 22, but it nonetheless contends that this straightforward term needs no construction. Tackform appears to believe that the term needs construction to ensure that the trier of fact understands that the "clamp mounting surface" must be separate from the "clamping mechanism," but the Court does not find that its proposed construction suggests this limitation.

12

Instead, Tackform's construction merely rearranges the words in the disputed term, which does not add anything to the common understanding of that term. *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997) (refusing to adopt a construction that "would contribute nothing but meaningless verbiage to the definition of the claimed invention").

Tackform does point out that the specification discusses one embodiment where the clamps are positioned on the end faces, with the end faces having a "relatively high friction surface area . . . . [that] permits each of the clamp members 26 to be positioned on the respective end faces 56, 58 while removing any opportunity for them to shift position." JA-8, col. 5, ll. 1–9. Tackform believes this embodiment demonstrates that the clamp must be separate from the frame. But this is just one option presented in the specification, which the Court cannot read into the claim term. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Nor does the Court find persuasive Tackform's argument that the PTAB determined that the validity of the '212 Patent depends on the clamp mounting surface being separate from the clamping mechanism. Instead, in denying the *Arkon* IPR, the PTAB only noted that the petition did not make clear how a prior art reference met the '212 Patent's requirements and that the prior art at issue did not explain whether it required two separate pieces or an integrally molded piece. JA-609.

Tackform's arguments for separate pieces do not find support in the intrinsic evidence and instead reflect an improper attempt to construe the claims to exclude its allegedly infringing Enduro products. *See NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("[C]laims may not be construed with reference to the accused device."). And

13

because "clamp mounting surface" is a readily understandable term, the Court finds no construction of the term necessary.

        **D.     "External Member" (Claims 21 and 27)**

Next, the Court considers the term "external member," which appears in claims 21 and 27 in describing how the base portion of the clamping mechanism includes "structure for mounting on an external member." The parties accept the *Arkon* court's determination that "[i]f the clamping mechanism is the arm tool, then the external member that the clamping mechanism is mounted to would be the frame member." 2017 WL 4403328, at *8 n.12. Indeed, this conclusion follows from the claim language and specification, which discusses how the clamping mechanism interacts with a clamp mounting surface on the frame member. *See* JA-8, col. 5, ll. 41–52. But, similar to their dispute over the "clamp mounting surface," the parties disagree as to whether the '212 Patent requires that the "external member" be separate from the clamping mechanism. Tackform argues that the Court should construe "external member" as a "frame member that is separate from the clamping mechanism," while NPI contends that the patent does not include such a limitation.

The Court agrees with NPI that it would be improper to import a limitation requiring separate pieces into the term. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993) ("It is improper for a court to add 'extraneous' limitations to a claim, that is, limitations added 'wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim.'" (quoting *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988))). While the drawings suggest that the clamping mechanism and frame member are separate pieces, simply disclosing only one embodiment in the specification is not enough to disavow all other potential embodiments. *Thorner v. Sony*

*Comput. Entm't Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012) ("Simply . . . disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term."). Therefore, the intrinsic evidence does not support reading in the limitation that the term "external member" requires separation from the clamping mechanism.

Similarly, extrinsic evidence also suggests that external could refer to both the outer surface of something and a separate object, further undermining Tackform's argument. *See, e.g.*, "external," Oxford English Dictionary (listing as the first definition "[s]ituated or lying outside; pertaining to, or connected with, the outside or outer portion of anything," and the third definition as "[s]ituated outside, not included within the limits of, the object under consideration"); "external, adjective" Merriam-Webster (listing as the second definition "of, relating to, or connected with the outside or an outer part," and the third definition "situated outside, apart, or beyond"). Therefore, the Court adopts the construction urged by the *Arkon* court, "the frame member," without adding any limitation as to the frame member's relationship to the clamping mechanism. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning[.]").

E. **"Angle" (Claims 21, 27, and 30)**

Next, the Court considers the term "angle," which appears in claims 21, 27, and 30. Tackform argues that the Court must identify the lines that make up the "angle" and proposes the following construction: "the angle formed by two lines, a first line defined by a surface on an interior portion of the base of the jaw portion and a second line perpendicular to the device mounting surface." Tackform's proposed construction effectively mirrors the construction NPI advanced in *Arkon*, although NPI now maintains that the term needs no construction. NPI's

15

position reflects the fact that the *Arkon* court concluded that the '212 Patent's use of the term "angle" is "self-explanatory and needs no further construction," further noting that NPI's definition did not sufficiently clarify the lines that made up the "angle." 2017 WL 4403328, at *11–12 ("[T]he parties' attempt to identify the two lines from which to measure the angle only muddles what is otherwise a seemingly intuitive calculation.").

As with the definitions proposed in *Arkon*, instead of providing clarity, Tackform's proposed construction introduces additional confusion. Tackform has addressed one criticism raised by the *Arkon* court, linking one of the lines to the base portion. *See id.* at *12 ("[T]o read out the base portion altogether when defining the angle, as NPI's proposed construction does, is improper."). But, as the *Arkon* court found, the claim and specification language do not define the "angle" in relation to the "device mounting surface," a flaw Tackform's proposed construction repeats. *See id.* at *12 & n.17. Because Tackform's construction does not find support in the claim language or specification, with "angle" instead a "readily understandable" term that "carr[ies] no special meaning within the Patent," the Court agrees with the *Arkon* court that "angle" needs no construction. *Id.* at *12; *see Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) ("In the interest of uniformity and correctness, this court consults the claim analysis of different district courts on the identical terms in the context of the same patent.").

### F. "Elongated" (Claims 27 and 30)

Finally, the Court addresses the term "elongated," which appears in claims 27 and 30 in reference to the base or jaw portions of the clamping mechanism. Tackform argues that the Court should construe "elongated" as "long in relation to width," maintaining that, as with angle, the term requires a reference point. It draws its definition from the figures found in the

specification, where, in figures 3A, 3B, 3D, and 3E, the length of the jaw and base portions appears longer than the width. JA-4–5. Although Tackform acknowledges that it cannot use these figures to determine absolute measurements, it maintains its proposed construction is appropriate because the drawings help explain the use of the term "elongated." But unlike in the case it cites, *Altair Engineering, Inc. v. LEDdynamics, Inc.*, where the court looked to certain figures because the patentee "specifically referenced the figures displaying its preferred embodiment when explaining" the disputed term and its effect on distinguishing prior art, 413 F. App'x 251, 254–56 (Fed. Cir. 2011), NPI has not specifically limited the term "elongated" in any way. Indeed, nothing in the specification or prosecution history suggests that the width of the "elongated" jaw or base portion in claims 27 and 30 is always less than the length. *See* JA-8, col. 6, ll. 44–54 (describing how the optional width W in figures 3A through 3E can vary and extend to the width of the end faces of the body portions).

Thus, the Court does not find that the drawings support Tackform's limiting construction. *See MBO Labs., Inc.*, 474 F.3d at 1333 ("[P]atent coverage is not necessarily limited to inventions that look like the ones in the figures."); *see also Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration."). Instead, the Court agrees with NPI that the term "elongated" does not need construction given that the term carries no special meaning in the '212 Patent and instead is a readily understandable limitation.

## CONCLUSION

The Court adopts the following constructions for the '212 Patent:

| Claim Term | Construction |
|---|---|
| "base portion" (claims 21, 27, 30) | a "bottom part of a clamping mechanism" |
| "jaw portion" (claims 21, 27, 30) | a "gripping part of a clamping mechanism that engages an accessory device" |
| "jaw portion extending at an obtuse angle from one end of the base portion" (claim 21)<br><br>AND<br><br>"jaw portion extending at an obtuse angle from one end of the elongated base portion" (claim 27) | a "jaw portion extending at an angle greater than 90 degrees and less than 180 degrees from one end of the [elongated] base portion" |
| "clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface" (claims 21, 27) | "clamp mounting surface acts together with the mounting surface of the clamping mechanism so that the resilient compressible pad of the jaw portion is spaced away from and inclined towards the device mounting surface" |
| "device mounting surface" (claims 21, 27) | "a surface that supports an accessory device" |
| "clamping mechanism" (claims 21, 23, 27, 30) | "an arm tool that holds the accessory device in place and urges the accessory device downwardly toward the device mounting surface" |
| "clamp mounting surface" (claims 21, 27) | No construction necessary |
| "external member" (claims 21, 27) | "frame member" |
| "angle" (claims 21, 27, 30) | No construction necessary |
| "elongated" (claims 27, 30) | No construction necessary |

Dated: July 2, 2021

_____
SARA L. ELLIS
United States District Judge